IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DISTRICT



CHARLIE C. NGUYEN and BIHN VAN NGUYEN,
Individually and on behalf of themselves
and all others similarly situated                                    **PLAINTIFFS**

v.                                          Civil Action No. 1:10cv178 LG-RHW

TRANSOCEAN, LTD.; TRANSOCEAN OFFSHORE
DEEPWATER DRILLING, INC.; TRANSOCEAN
DEEPWATER, INC.; BP, PLC; BP PRODUCTS NORTH
AMERICA, INC.; BP AMERICA, INC.; HALLIBURTON
ENERGY SERVICES, INC.; CAMERON INTERNATIONAL
CORPORATION; AND JOHN DOES 1-10                                **DEFENDANTS**

## CLASS ACTION COMPLAINT
(Jury Trial demanded)

COME NOW the Plaintiffs, CHARLIE C. NGUYEN and BIHN VAN NGUYEN,

(hereinafter sometimes referred to as "Plaintiffs"), individually, and on behalf of themselves and

all others similarly situated, and in support of this Class Action Complaint would show unto the

Court as follows:

## OVERVIEW

1.    This lawsuit is related to the catastrophic oil spill under way in the Gulf of Mexico,

      triggered by the explosion and subsequent sinking of the Deepwater Horizon drilling rig

      on April 20, 2010.

2.    Mississippi shrimpers and fishermen, whose families are dependent on the Gulf's bounty,

      expect financial devastation from the burgeoning oil slick, and can only watch as their

      life's work is interrupted, and possibly destroyed.

3.    This lawsuit is an attempt to protect those shrimpers and families from destitution.

4.      A jury trial is demanded.

## PARTIES

5.      Plaintiffs, and each of them, are Mississippi-based commercial shrimpers who own and

operate shrimp boats in the Mississippi Sound and Gulf of Mexico.  Plaintiffs are adult

residents of Harrison County, Mississippi, who may be served with process through

undersigned counsel.

6.      Defendants TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER

DRILLING, INC.; and TRANSOCEAN DEEPWATER, INC., hereinafter collectively

referred to as "Transocean," or "Transocean entities," are one or more foreign

corporations doing business but not registered in Mississippi.  Transocean, Ltd., can be

served with process as provided by law, including on any proper person at the corporate

offices, 4 Greenway Plaza, Houston, TX 77046.

7.      Defendants BP, PLC; BP PRODUCTS NORTH AMERICA, INC.; and BP AMERICA,

INC., hereinafter collectively referred to as "BP," or "BP entities," are one or more

foreign corporations doing business but not registered in the State of Mississippi.  BP

America, Inc., can be served with process on CT Corporation System, 645 Lakeland East

Dr., Ste. 1, Flowood, MS 39232.

8.      HALLIBURTON ENERGY SERVICES, INC., hereinafter referred to as "Halliburton," is

a foreign corporation registered to do business in the State of Mississippi.  This

Defendant can be served with process on CT Corporation System, 645 Lakeland East Dr.,

Ste. 1, Flowood, MS 39232.

9.      CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON

CORPORATION, hereinafter referred to as "Cameron," is a foreign corporation that registered to do business in the State of Mississippi. This Defendant can be served with process at CT Corporation System, 645 Lakeland East Dr., Ste. 1, Flowood, MS 39232.

10.    JOHN DOES 1-10 are individuals or entities, whose identities and wereabouts are currently unknown to Plaintiffs, but whose direct or proximate negligence or intentional actions caused or contributed to the Plaintiffs' injuries. When the true identities and whereabouts of these Defendants are determined, the pleadings will be amended.

## JURISDICTION AND VENUE

11.    This is a class action lawsuit brought under Fed. R. Civ. P. 23. The Plaintiffs seek to become class representatives as set out below. Undersigned counsel seek to be named as class counsel.

12.    The Court has jurisdiction over this class action pursuant to (1) 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and is a class action brought by the citizens of a state that is different from the state where at least one of the Defendants are incorporated or do business; and (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America.

## FACTUAL ALLEGATIONS

13.    Plaintiffs and other members of the proposed class are engaged as commercial shrimpers and fishermen in the Mississippi Sound and Gulf of Mexico, where they own and operate shrimp boats and other commercial fishing vessels or processing facilities.

14.    TRANSOCEAN employed workers aboard the offshore drilling vessel, DEEPWATER

HORIZON, a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by the aforementioned TRANSOCEAN entities and/or the aforementioned BP entities, at all materials times herein.

15.  On or about April 20, 2010, at approximately 10:00 p.m., an explosion occurred on the DEEPWATER HORIZON. At the time of the explosion, the rig was located fifty miles southeast of Venice, Louisiana. The explosion is believed to have killed eleven (11) crew members, and injured many more. Days later, the remnants of the crippled platform collapsed and sank.

16.  In the days prior to the explosion, the Defendant, HALLIBURTON, was engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties which was a cause of the explosion. At the time of the incident, HALLIBURTON had not yet installed a temporary cement plug to seal the well.

17.  On information and belief, the Defendant, CAMERON, manufactured, supplied, installed and/or maintained defective blowout preventers, "BOP's," that failed to operate and control the oil leak.

18.  Almost immediately after the explosion, oil began to gush into the Gulf of Mexico from a depth of 5,000 feet below the damaged rig.

19.  Since shortly after the accident, BP or others have used remotely operated vehicles in attempts to activate the subsea blowout preventer to stop the well from leaking an estimated 5,000 barrels of crude per day into the Gulf. To date, efforts to shut off the well by use of the subsea blowout preventer have been unsuccessful.

20.    Day by day, the news got worse, as oil company executives, Coast Guard officials, and an array of government agencies scrambled to figure out the scope of the problem and how to stop it.

21.    As of May 2, the oil slick resulting from the explosion had a circumference of thousands of miles, and could be seen from space. The slick was said to be larger than the country of Jamaica.

22.    The oil slick has begun to come ashore on the Gulf coastlines of Mississippi, Alabama and Louisiana; it is destroying the fishery and harming the environment, and its effects are escalating. Even the east coast of the United States may be in danger.

23.    Federal officials have halted all fishing activities near the spill, and similar action in state waters seems inevitable. As a result, virtually all income-producing activity for the Plaintiffs and Class Members has ceased or will cease in the immediate future.

24.    Plaintiffs maintain that Defendants, and each of them, were negligent or wanton in causing the disaster, and in failing to properly respond to it. First, the Defendants caused this nightmare by improperly installing and operating the Deepwater Horizon. Then, they downplayed the nature, size and extent of the oil leak and failed to employ adequate responders and/or equipment in the field to control the oil slick before it got out of hand. Finally, and too late, they admitted they were not properly equipped nor able to handle the crisis.

25.    As a result of the above described incidents, Plaintiffs and other members of the proposed class have been prevented from shrimping and fishing in the Gulf anywhere near the explosion site and oil spill. These shrimpers and fishermen are losing income because of

the oil spill, and reasonably fear that they will lose their entire livelihoods.

## CLASS DEFINITION

26.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, who

are members of the following Class:

> **All Mississippi residents who work in, or derive income from, the shrimping and fishing industries in the Mississippi Sound or Gulf of Mexico, and related waterways, and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010, explosion which occurred aboard the Deepwater Horizon drilling rig and the resulting oil spill.**

## CLASS ACTION ALLEGATIONS

27.    A class action lawsuit is appropriate in this matter as follows:

a.    <u>Numerosity of the class</u>: The proposed class is so numerous that joinder is impractical. There are hundreds of commercial shimpers and fishermen in Mississippi directly affected by the spill, and thousands of affiliated businesses and individuals. The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

b.    <u>Predominance of common Questions of Fact and Law</u>: There is a well-defined community of interest in that the questions of law and fact common to the class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

   i.    Whether Defendants caused and/or contributed to the explosion and oil spill;

   ii.    Whether Defendants' actions were negligent;

   iii.    Whether or not the explosion and oil spill have caused environmental or

other damage; and,

    iv.    The amount of damages Plaintiff and the Class Members should receive as compensation.

c.    <u>Typicality</u>: Plaintiffs and Class Members have suffered similar harm as a result of Defendants' actions.

d.    <u>Adequacy of Representation:</u> Plaintiffs will fairly and adequately represent and protect the interests of the members of the class because Plaintiffs' interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs have no claim antagonistic to those of the class. Plaintiffs have retained counsel competent and experienced in complex class actions and maritime litigation, and with particular experience representing the interests of Gulf shrimpers and fishermen.

e.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. The court system would be overwhelmed if every member of the proposed class was required to file a separate suit. Further, individual litigation presents a potential for inconsistent or contradictory judgments and the prospect of a race for the courthouse and an equitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer

management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

28.   The various claims asserted in the action are certifiable under the provisions of Rule 23(b)(1) and/or 23(b)(2) of the Federal Rules of Civil Procedure because:

a.   The prosecution on separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, loss of establishing incompatible standard of conduct for Defendants;

b.   The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interest; and,

c.   Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the class as a whole.

## COUNT I: NEGLIGENCE

29.   Plaintiffs reassert all foregoing allegations as if fully restated in this paragraph.

30.   At all times material hereto, the vessel which exploded, was owned, navigated in navigable waters, manned, possessed, managed, controlled, chartered and/or operated by the TRANSOCEAN entities and/or the BP entities.

31.   The explosion, oil spill and resulting economic and ecological disasters occurred as the

result of the negligence of the Defendants. These acts of negligence render the Defendants liable to Plaintiff pursuant to the provisions of general maritime law for negligence.

32. The accident was caused by Defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard including the requirement to test the subsea blowout preventer every two weeks.

33. The Defendants, through their agents, servants and employees, were negligent as follows:

    a.    Failing to properly operate the Deepwater Horizon;

    b.    Failing to properly supervise employees upon the Deepwater Horizon;

    c.    Failing to properly train and/or supervise employees upon the Deepwater Horizon;

    d.    Failing to properly inspect to assure that Deepwater Horizon's equipment and personnel were fit and utilized for their intended purpose;

    e.    Failing to provide sufficient personnel to perform operations aboard the Deepwater Horizon;

    f.    Failing to exercise due care and caution in the operation of the Deepwater Horizon;

    g.    Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon day wore operating and construction at the time of the explosion;

    h.    Inadequate and negligent training and hiring in the construction and maintenance and operation of the Deepwater Horizon;

i.  Failing to ascertain that the Deepwater Horizon was free from defects and/or in proper working order;

j.  Failure to timely bring the release under control;

k.  Failure to react to danger signs; and, such other acts of negligence and omissions as will be shown at the trial of this matter; and

l.  Other acts of negligence which will be shown more fully at trial.

34.  In addition, and alternatively, any explosion and resulting oil release was caused by defective equipment which was manufactured or in the care, custody, and control of the Defendants and over which the Defendants had control.  Defendants knew or should have known of these defects and Defendants are, therefore, liable for them.

35.  The damages to Plaintiff and the Class Members were also caused by or aggravated by the fact that Defendants failed to properly respond to the release and take necessary actions to mitigate the danger to the surrounding community and/or to timely and adequately warn of the release of oil.

36.  In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by the Plaintiff and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by the Plaintiffs and the Class Members, but which are within the knowledge and control of the Defendants, there being no other possible conclusion that the explosion and release of oil resulted from the negligence of Defendants.  Furthermore, the explosion and the resultant oil release would not have occurred had the Defendants exercised the high degree of care required of them. Plaintiff, therefore, pleads the doctrine of the *res ipsa loquitor*.

37.   Plaintiff and the Class Members are entitled to a judgment finding Defendants liable to Plaintiff and the Class Members for damages suffered as a result of Defendants' negligence and awarding Plaintiff and the Class Members adequate compensation therefore in amounts determined by the trier of fact.

38.   Plaintiffs, individually, and on behalf of all others similarly situated, demand that Defendants provide the cost of cleanup and pay for the consequential damages suffered by the Class Members.

## COUNT II: OIL POLLUTION ACT

39.   Plaintiffs reassert all foregoing allegations as if fully restated in this paragraph.

40.   The Oil Pollution Act imposes liability upon a "responsible party for a ... facility from which oil is discharged ... into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

41.   Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

42.   Federal officials, including President Obama, have named BP as the responsible party, and BP itself has acknowledged that it is responsible for the oil spill. Accordingly, under the Oil Pollution Act, BP is liable for the damages caused to the Plaintiffs and other class members.

43.   As a result of the oil spill, the Plaintiffs and Class Members have not been able to use natural resources (air and water, and potentially wetlands and other areas and spaces that

have and/or may become contaminated by the oil) for the their subsistence, and they are entitled to recover from BP for such damages in amounts to be determined at trial.

44.    Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

45.    As a result of the oil spill, Plaintiffs and Class Members have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefor from BP in amounts to be determined by the trier of fact.

46.    Alternatively, Plaintiffs also may pursue Pollution Act claims directly against BP, as provided by the Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, for themselves, and on behalf of all others similarly situated, demand judgment against Defendants, jointly, severally, and *in solido*, as follows:

A.    An order certifying the class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing Plaintiff as the class representative; and appointing undersigned counsel as counsel for the class;

B.    Economic and compensatory damages in the amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes the Court's jurisdiction to hear this case;

C.    Punitive damages;

D.    Pre-judgment and post-judgment interest at the maximum rate allowable by law;

E.    Attorney's fees and costs of litigation;

F.      Such other and further relief available under all applicable state and federal laws

and any relief the Court deems just and appropriate; and

G.      A trial by jury as to all Defendants.

Respectfully submitted,

CHARLIE C. NGUYEN and BIHN VAN NGUYEN, individually, and on
behalf of themselves and all others similarly situated, PLAINTIFFS

By:    SHEEHAN & JOHNSON, PLLC
/s/ Patrick A. Sheehan
PATRICK A. SHEEHAN

/s/ R. Hayes Johnson, Jr.
R. HAYES JOHNSON, JR.

MSB 10697

PLAINTIFFS' ATTORNEYS:
Patrick A. Sheehan
R. Hayes Johnson, Jr.* (MSB #10697)
SHEEHAN & JOHNSON, PLLC
2462 Pass Road
Biloxi, MS 39531
228.388.9316-office
228.388.4433-facsimile
pat@sheehanlawfirm.com
rhayesj@aol.com
*Also admitted in AL, AR, FL

OF COUNSEL:
**Robert Gambrell**
Gambrell & Associates, PLLC
101 Ricky D Britt Blvd, Ste 3
Oxford, MS 38655
662-281-8800
rg@ms-bankruptcy.com